IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM A. MCGEE, | ) | |
| | ) | 8:05CV512 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| OMAHA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment, Filing No. 23, pursuant to Fed. R. Civ. P. 56, and defendant's objection to plaintiff's evidence, Filing No. 33.[1] Plaintiff brought this lawsuit alleging discrimination and retaliation on the basis of race pursuant to 42 U.S.C. § 1981; Title VII discrimination and retaliation, 42 U.S.C. § 2000e; and discrimination and retaliation in violation of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.* The court has carefully reviewed the record, briefs, and relevant law. The court concludes the motion for summary judgment should be granted.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

---

[1]Defendant argues that plaintiff's evidence lacks foundation, is hearsay, and is not authenticated. The court agrees and will not consider Filing No. 31, Ex. A to Affidavit.

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not

weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 829 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**BACKGROUND**

Defendant employed plaintiff, an African-American male, since 1975. At the time in question, plaintiff worked as crew leader at the Elkhorn facility. On Saturday, February 22, 2003, a group of employees placed a noose around a part of a boat located at the Elkhorn substation. The employees believed the arm on the man on the boat looked like an Old West gallows. The noose was located on the boat about fifteen feet from the plaintiff's office. Plaintiff allowed the employees to leave early for the day. On Monday, February 24, 2003, someone reported the noose to the plaintiff. Shortly thereafter, a supervisor talked with plaintiff about allowing his employees to leave early on that previous Saturday. Thereafter, plaintiff called management and complained about the noose. Management sent two human resource employees, both African-American, to the Elkhorn station.

3

Management immediately conducted an investigation. Initially six white employees and one African-American employee were disciplined for the behavior.[2] However, the other six employees stated that plaintiff knew about the incident on that Saturday, and more importantly, that he participated in the incident. The six white employees filed discrimination charges with the Omaha Human Relations Department (OHRD) alleging discrimination against them on the basis of race. After further investigation the defendant and the OHRD determined that the plaintiff likely participated in the noose incident. The disciplinary action against the white employees was later rescinded, although the employee who hung the noose received a day off without pay. Defendant also transferred this employee to the Irvington Center.

Plaintiff subsequently was questioned by defendant for allegedly making inappropriate comments to female employees. Plaintiff allegedly made comments about "jumping the bones" of a female vice president and the "big tits" of another female employee. Ex. 13, Aff. of Anderson. Defendant took no further action. Plaintiff says these accusations were false.

Subsequently, plaintiff and some of the employees had difficulty communicating effectively together, apparently because the employees no longer trusted the plaintiff. Defendant brought in an outside trainer to work with the employees on diversity and communication issues. Plaintiff refused to attend all of the sessions, although it appears he might have attended two of them. The communication problems continued. Defendant then offered plaintiff a position at two different locations as a crew leader, one with a day

---

[2] Later, the defendant determined that the African-American employee was not involved in the noose incident.

shift job at the Energy Plaza station and the other at the Irvington Center which was a mixed shift job. Plaintiff chose the Irvington Center, a place he had requested to work back in 2001.

Plaintiff filed two charges of discrimination. First, he filed a claim in April 2003, on the basis of race/color discrimination because of ostracizing treatment by his co-employees. Second, on June 17, 2003, he filed a claim alleging race/color discrimination and retaliation based on his transfer to the Irvington station. Both charges were determined by the OHRD to be without merit. Plaintiff retired, according to the defendant, or was constructively discharged, according to the plaintiff, on April 1, 2005. Defendant contends that plaintiff attempted to retire in 2004, but the benefits staff told him to retire in April of 2005, so he would receive greater benefits. Plaintiff took this advice and retired on April 1, 2005. He did not look for or receive subsequent employment. He alleges he was constructively discharged two years after he made his complaint about the noose, which also was the same date he was entitled to retire with full retirement benefits.

**DISCUSSION**

*a. Hostile Environment - Racial Harassment*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . race." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on [race] which creates a hostile or abusive working environment violates Title VII." *McCown v. St. John's Health System, Inc.,* 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of racial discrimination based on a hostile work environment, an employee must show: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment: (3) the

5

harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. *Id; Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005). The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998) (citation omitted). "Thus, the fourth part of a hostile environment claim includes both [an] objective and subjective component: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." See *Duncan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). In determining whether or not the alleged harassment is severe and pervasive requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.* (citation omitted).

Defendant argues that there is no basis in the complaint, in the charges to OHRD, or in the EEOC complaint to support a claim for hostile environment on the basis of race. The court agrees. The only claims in this lawsuit relate to the transfer issue and the belief that co-workers ostracized and would not communicate with the plaintiff. Plaintiff made no

other claim of race discrimination connected to his hostile work environment claim.[3] The investigator for OHRD actually stated that the noose incident itself was not a basis for a hostile work environment, as the hostile work claims were for incidents that occurred after the noose incident claim. Filing No. 24, Exs. 4 & 5. Regardless, the noose incident appears to be a one time occurrence; defendant immediately investigated and took action; and there is evidence that plaintiff may have participated in the event. The court finds that no claim of hostile environment based on race is actionable in this case. *Sallis v. University of Minnesota*, 408 F.3d 470, 476-77 (8th Cir. 2005) (rude and insensitive remarks held insufficient to state a hostile work environment claim). The plaintiff has failed to show that the work environment was severe or pervasive. There is simply a total lack of evidence that would support elements two through five to establish a prima facie case for a hostile environment claim.

### b.   *Title VII and § 1981 Discrimination*[4]

Plaintiff claims he was ostracized by his co-workers after the noose incident; he was transferred to the Irvington Center; and the defendant constructively discharged him. The Supreme Court established a three-step framework for analyzing discrimination in the workplace. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden-shifting framework, the plaintiff in the present case must establish: (1) that he is a member of a protected class, (2) that he was meeting the employer's legitimate job expectations, (3) that he

---

[3] Plaintiff now apparently argues that the noose is some evidence of discrimination. However, this issue was not presented to the OHRD or the EEOC in support of a hostile work environment claim. The court finds this argument is without merit.

[4] Section 1981 claims are analyzed under the same standards as Title VII claims. *Davis v. KARK-TV Inc.*, 421 F.3d 699, 703 (8th Cir. 2005).

suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir. 2004). The Eighth Circuit has stated that a plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the employee. *Id.* The burden then shifts to the employer to show a nondiscriminatory reason for the adverse action and then back to the plaintiff to show that the articulated reason is merely a pretext for discrimination. *Id.*

The plaintiff is a member of a protected class. Plaintiff argues that only he and the one white employee who was suspended were transferred. The other five white employees were not transferred. Plaintiff has offered no evidence that similarly situated employees were treated differently, with the possible exception that he was transferred and they were not. Further, with regard to an adverse employment action, he alleges he was both transferred and then constructively discharged. Defendant responds arguing that the nondiscriminatory reasons for transferring plaintiff are that (1) he could no longer get along with the other employees who worked for him as they no longer trusted him, and (2) plaintiff would not complete the entire remedial training. Further, the defendant concluded that plaintiff participated in the noose incident. Defendant argues it had a choice of transferring plaintiff or transferring the entire twelve employees in the crew. Defendant argues the transfer occurred because of communication problems, not because of disciplinary reasons and not because of reasons related to race. There is no discrimination, argues defendant, as plaintiff still received his full salary and was at least offered the shift he wanted to work. Finally, defendant contends plaintiff voluntarily retired and was not discharged.

Plaintiff must then rebut the nondiscriminatory reasons set forth by the defendant. Plaintiff has been unable to do so. The court finds that ostracism by subordinates or their failing to talk with the plaintiff is not actionable, as it is not race discrimination by defendant. Likewise, transferring plaintiff to the Irvington Center is not actionable, as it is not materially adverse. *Curby v. Solutia Inc.*, 351 F.3d 868, 873-74 (8th Cir. 2003). Defendant was presented with a personnel conflict. There is no evidence that defendant based its transfer decision on the basis of race, and the court finds there is no evidence of racial discrimination. The court further finds that once defendant offered its reasons for its decisions, plaintiff did not submit evidence that would establish that these decisions were a pretext for discrimination. Accordingly, this claim must fail.

### c. Retaliation Claims Under § 1981 and Title VII

Plaintiff raises the following issues under this claim: he was ostracized by co-employees; he was transferred; he was then falsely accused of making inappropriate comments about his female co-workers; and he was constructively discharged two years later. Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). To establish a prima facie claim of retaliation, the plaintiff has to show that: (1) he filed a charge of harassment or engaged in other protected activity; (2) his employer subsequently took an adverse employment action against him; and (3) the adverse action was casually linked to his protected activity. *See Cross v. Cleaver,* 142 F.3d 1059, 1071-72 (8th Cir.

1998). If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.* at 1072.

The protected activity asserted by the plaintiff is the report to management about the noose and the report to management about the co-workers' failure to get along. The court agrees that for purposes of this motion, plaintiff's conduct is protected activity. Plaintiff contends that he filed his complaint on April 14, 2003, and one month later he was transferred to the Irvington Station. The transfer took place two days after the defendant submitted its position statement to the investigating agency. Plaintiff argues the temporal proximity is sufficient to state a claim. *Stevens v. St. Louis Univ. Med. Ctr.*, 97 F.3d 268, 270-72 (8th Cir. 1996). This transfer was materially adverse, argues plaintiff, because he had to revert to a rotating shift. However, plaintiff admits he could have taken a position that would have avoided the rotating shift at Energy Plaza, but he chose not to do so, because the job description was evidently somewhat different from his job at Elkhorn.

The court finds that plaintiff has failed to show that the transfer was materially adverse. *Burlington Northern Santa Fe Ry. v. White*, 126 S.Ct. 2405, 2415 (2006) (adversity must be material). Plaintiff's pay did not change; his basic job did not change; his benefits did not change. His hours did change, but he was offered a position elsewhere with daytime hours. Even if the court concluded the transfer was materially adverse, the defendant articulated a legitimate nondiscriminatory reason for the transfer, namely a personnel issue that could not be resolved. The plaintiff then failed to offer any evidence

that this reason was a pretext for discrimination. Accordingly, the court finds this claim is without merit.

### d. Constructive Discharge

The Eighth Circuit has held that to constitute a constructive discharge, the employer's actions must be conducted with the intention of causing the employee to resign. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981). Further, it is not sufficient that he simply shows a violation of Title VII. *Hutchins v. International Brotherhood of Teamsters,* 177 F.3d 1076, 1082 (8th Cir. 1999); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998). "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999); *Kimzey v. Wal-mart Stores, Inc.,* 107 F.3d 568, 574 (8th Cir. 1997). "The intent element is satisfied by a demonstration that quitting was a 'reasonably foreseeable consequence of the employers discriminatory actions.'" *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) (*quoting Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997)). Further, an employee has an obligation to not assume the worst and act too quickly for purposes of determining whether he has been constructively discharged. *Tork v. St. Luke's Hospital,* 181 F.3d 918, 920 (8th Cir. 1999). Minor changes in duties or working conditions do not constitute grounds for a constructive discharge claim. *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1016-17 (8th Cir. 1999); *Harleston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). However, actions amounting to a constructive discharge constitute adverse employment actions for purposes of Title VII. *Kerns,* 178 F.3d at 1016 (*citing Parrish v. Immanual Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)).

The court first finds that plaintiff failed to file a claim with the administrative agencies regarding his constructive discharge claim. In the alternative, the court finds plaintiff has failed to meet his burden of establishing constructive discharge. There is not sufficient evidence to permit this issue to proceed to trial. There is no evidence that defendant intended to make plaintiff's work conditions intolerable. There is no evidence that plaintiff perceived his workplace to be abusive or intolerable. There is no showing that the defendant attempted to make the plaintiff quit. On the contrary, defendant transferred plaintiff, and plaintiff maintained his salary, title, and could have maintained his shift hours. Further, after the Irvington site closed down, defendant transferred plaintiff to one of its other sites with the same pay and job title. Significantly, it appears defendant talked plaintiff out of retiring at one point so he could receive more money at a later date. The court finds the plaintiff has failed to exhaust his claims for constructive discharge and, in the alternative, has failed to establish a prima facie case of constructive discharge or establish any evidence of pretext to support his claim.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 23, is granted. A separate judgment will be entered in accordance with this Memorandum and Order dismissing this case.

DATED this 14th day of May, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge